[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
 I
This is an appeal by the plaintiffs, Eric Leshine and Erin O'Hare, from a decision of the defendant, the Zoning Board of Appeals of the Town of Guilford ("the Board"), denying the plaintiffs' appeal of an action of the town's Zoning Enforcement Officer ("ZEO") in issuing a zoning permit to the defendants, Samuel D. and Diana A. Bartlett ("the Bartletts"), permitting the construction of a "foundation only, to be used as a hard surface parking area", pending certain other approvals for a building structure proposed on property known as 564 Great Hill Road in the Town of Guilford. It appears from the record that the Bartletts had laid this foundation, in anticipation of erecting a garage and accessory apartment, prior to filing the subject application.
The Bartletts filed their application on or about July 21, 1998. On the same day, the ZEO issued a zoning permit, limited to "foundation only, to be used as a hard surface parking lot until such time as the required approvals are made for construction and use." On August 19, 1998, the plaintiffs appealed the ZEO's decision to the defendant Board., claiming, inter alia, that the proposed construction associated with the application exceeded the maximum lot coverage requirement for the property as provided by the Regulations of the Town of Guilford ("Regulations"). The Board held a public hearing on the plaintiffs' appeal on September 23, 1998, and on that same date voted to deny said appeal. This appeal followed. The defendant Board's Motion to Dismiss, claiming lack of aggrievement, was denied on May 11, 1999, the court finding that the plaintiffs had standing to pursue this appeal. A hearing on the merits was held on October 21, 1999. CT Page 1768
 II
Pursuant to General Statutes, Section 8-7, the Board is authorized to hear and decide appeals from any order, requirement or decision of the zoning enforcement officer. In hearing an appeal of a ZEO's decision, the Board acts administratively, in a quasi-judicial capacity, Lawrence v. Zoning Board of Appeals,158 Conn. 509, 513-14. Boards of Appeal are necessarily entrusted with the function of deciding, within prescribed limits and consistent with the exercise of a legal discretion, whether a regulation applies to a given situation, and the manner of its application, Connecticut Sand Gravel Corporation v. ZoningBoard of Appeals, 150 Conn. 439, 442 (citation omitted). On appeal, the court is not bound by the Board's interpretation but must determine if the Board correctly interpreted the pertinent regulation and applied it with reasonable discretion to the facts, Spero v. Zoning Board of Appeals, 217 Conn. 435, 440
(citations, quotation marks omitted). Although the position of the municipal land use agency is entitled to some deference; the interpretation of provisions in the ordinance is nevertheless a question of law for the court, Coppola v. Zoning Board ofAppeals, 23 Conn. App. 636, 640.
 III
It appears from the record that the Bartletts planned to build a three bay garage and accessory apartment on the site of the foundation at issue, and did lay said foundation prior to seeking the permit at issue. The application at issue was made following advisement by the ZEO that the planned garage/apartment would require certain special permits; construction of the garage/apartment was put on "hold" and approval for construction of the foundation was sought after the fact (ROR, #010, Transcript of September 23, 1998 meeting, p. 11).
The subject property is in an R-8 District. It was created in 1981, pursuant to Regulations, Section 31.2.2, Residential R-8 Districts, which provided:
"Each lot in a Residential R-8 District shall have the area, shape and frontage as specified in table #3, provided, however, that two (2) lots, each meeting the area, shape and frontage requirements of the Residential R-7 District, including standards for interior lots under Par. 31.2.1, may be subdivided or CT Page 1769 conveyed from a tract of land in consecutive three-year periods commencing October 1, 1978 and when the remainder of such tract has area, shape and frontage also conforming to such requirements of the Residential R-7 District."
In June, 1985, Section 31.2.2 was amended to read as follows:
"Residential R-8 Districts: Each lot in a Residential R-8 District shall have the area, shape and frontage as specified in TABLE #3.
A Right to Subdivide Into R-7 Lots: As of July 5, 1985, each tract of land in an R-8 District may subdivide or convey off not more than two (2) lots meeting the R-7 District requirements providing that:
 i. The remainder of such tract shall conform to the area, shape and frontage requirements of the Residential R-8 District.
 ii. A tract of land, for the purpose of this section shall be defined as an undivided parcel existing as of July 5, 1985, and such right to subdivide may not be further exercised after two such lots have been subdivided, with respect to each such tract of land."
This section, now codified as Section 273-25.B, remains substantially unchanged today.
TABLE #3 delineates the area, location and bulk standards for the Town's zoning districts, including the R-7 and R-8 Districts. TABLE #3 lists twelve such standards, including lot area, shape, frontage and lot coverage. Lot coverage may not exceed 10% in an R-7 District and may not exceed 5% in an R-8 District.
The plaintiffs contend that the subject lot was created pursuant to Regulations, Section 31.2.2 as it stood prior to the 1985 amendment; that such lot had to meet the R-7 requirements listed, that is, the area, shape and frontage requirements; but that such lot was required otherwise to meet the requirements of an R-8 District, including the 5% lot coverage requirement of an R-8 lot. The plaintiffs claim that, with the addition of the foundation at issue, total lot coverage exceeds the 5% limit for an R-8 lot and that the Bartletts neither sought nor received a variance of said coverage requirements; accordingly, the Board's CT Page 1770 decision upholding the ZEO's granting the permit at issue was arbitrary, illegal and an abuse of discretion.
The defendants claim that the Board is entitled to apply the provisions of regulations, Section 273-25 B as it stands today, to the subject application; that, applying the provisions of Section 31.2.2 as it stood in 1978, to the subject application, the ZEO properly issued a permit, as the coverage requirements of an R-7 lot applied, with no variance needed; and, finally, the foundation/parking area at issue is not a "structure", as defined by Regulations, Section 273-2 B and, therefore, is not subject to the lot coverage requirements, which pertain to "buildings and other structures."
After review of the record and consideration of briefs and arguments of counsel, the Court concludes that the plaintiffs have failed to meet their burden of persuasion.
The plaintiffs claim that in creating the subject lot in 1981, the Bartletts acquired a non-conforming R-8 lot, that is, a lot which met the area, shape and frontage requirements of an R-7 lot, but which had otherwise to meet R-8 requirements. When more than one construction of a regulation is possible, we adopt the one that renders the enactment effective and workable and reject any that might lead to bizarre and unworkable results, Planning Zoning Commission v. Gilbert, 208 Conn. 696, 706 (citation omitted). The plaintiffs' construction is not logically required and leads to bizarre results. For example, pursuant to Table #3, an R-8 lot with the minimum area of 160,000 square feet would have a maximum aggregate coverage limitation(5%) of 8,000 square feet; an R-7 lot with the minimum area of 80,000 square feet would have a maximum aggregate coverage limitation (10%) of 8,000 square feet; the hybrid (R-7 area with R-8 coverage requirement) lot postulated by the plaintiffs would have a maximum aggregate coverage limitation (10%) in the 4,000 square foot range, approaching the maximum allowed for an R-3 (20,000 square feet minimum area) lot. There is a rough symmetry in the coverage requirements for the various districts which is set askew by the plaintiffs' interpretation.
Further, Regulations, Section 31.2.2 as adopted in 1978, addressed exclusively the area, shape and frontage requirements for each lot in an R-8 District and did not address lot coverage or other Table #3 requirements. Section 31.2.2 focused on subdividing or conveying under certain conditions, from a tract CT Page 1771 of land; the other Table #3 standards have to do with buildings or other structures to be erected on such lots and were simply not addressed in Section 31.2.2. The court finds that the subject lot, created in 1981, pursuant to Regulations, Section 31.2.2, is subject to the coverage requirements of an R-7 lot as established in Regulations, Table #3. The lot is not a non-conforming R-8 lot, but is a conforming R-7 lot in an R-8 District.
The Court is further persuaded that the Board may properly apply the Regulations, as they exist today, to the subject application. To require a Board to regulate land use, applying since amended or repealed regulations to various applications, would be productive of much confusion. Zoning ordinances are in derogation of the right of private property, and where exemptions appear in favor of the property owner they should be liberally construed in his favor, Goldreyer v. Board of Zoning Appeals,144 Conn. 641, 646 (citation omitted). A landowner, of course, may claim exemption from a regulation's requirements by virtue of a valid pre-existing non-conforming use, but the converse is not true; a Board is not required, to the detriment of the landowner, to apply superseded regulations to an application such the one at issue. It is undisputed that the foundation/parking area, the subject of this applications would not need a variance for coverage under the Regulation presently in effect.
Further, the Court concludes that the foundation/parking area, the subject of this appeal, is not a structure, as defined in Regulations, Section 273-2 B:
STRUCTURE — Anything constructed or erected, including a building, which has a permanent location on a lot or lots or anything attached to something having a permanent location in the ground, excluding sidewalks, parking areas, driveways and patios on existing natural ground level but including tennis courts and swimming pools. Decks constructed at two feet or less above natural grade and without fences or railings are not considered structures when calculating lot coverage under Table 3.
The Court finds that the subject foundation/parking area is a parking area, explicitly excluded from the definition of "structure" and thus excluded from the coverage requirements of Regulations, Table 3, so long as said foundation is used ss a parking area.
 IV CT Page 1772
The plaintiffs make certain other claims.
The plaintiffs assert that the "garage and accessory apartment foundation structure" constitutes a modification of a special permit for a bed and breakfast use of the subject property, without special permit review and approval by the Town's Planning Zoning Commission. It appears that said commission issued such special permit and the commission's action is presently on appeal to this court. The court finds that this claim by the plaintiffs is not properly before the court in this case and declines to review it.
The plaintiffs claim that "the garage structure, and accessory apartment use," both require special permit review, and approval, by the Planning Zoning Commission. "Therefore, the issuance of the subject zoning permit by defendant ZEO is invalid, as a matter of law." The court is unpersuaded. In the application at issue before this court, the defendants Bartlett neither sought, nor did the ZEO issue, a permit to construct a garage and accessory apartment. Should the planning and zoning commission take up such application we may assume the plaintiffs will be given a forum in which to be heard, as is implied in the ZEO's condition, "until such time as required approvals are made for construction and use." (ROR, Exhibit #002). But this is not the proper forum in which to review any plans for construction of a garage with accessory apartment.
Similarly, with regard to the plaintiffs' claim that the height of the garage and accessory apartment structure exceeds the 20-foot maximum height requirement in a R-8 zoning district. Therefore, say plaintiffs, a zoning permit for the garage and accessory apartment foundation structure cannot issue, unless, and until, variance relief is obtained from the defendant Board. What is before the Court is appeal of a Board's upholding of the ZEO's granting of a zoning permit to construct a foundation, to be used as a hard surface parking area. The granting of said permit does not allow the Bartletts to construct a garage and accessory apartments and the maximum height requirements for such structure do not come into play in reviewing the Board decision at issue in this case. These claims raised by the plaintiffs may be contested in another forum on another day, but do not constitute a basis for the court's sustaining the plaintiffs' appeal in the matter presently before the Court. CT Page 1773
 V
The plaintiffs have failed to establish, by a fair preponderance of the evidence, that the defendant Board in upholding the action of the Zoning Enforcement Officer, in issuing a zoning permit to the defendants Bartlett, acted arbitrarily, illegally or in abuse of discretion.
Accordingly, the appeal is dismissed, and judgment may enter in favor of the defendants, the Zoning Board of Appeals of the Town of Guilford and Samuel D. and Diana A. Bartlett.
By the Court,
Downey, J.