[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
 I CT Page 8713
This is a land use appeal. The plaintiff, Robert Costanzo ("Costanzo" or "the plaintiff") appeals the action of the defendant, the Zoning Board of Appeals of the Town of Branford ("the Board" or "the ZBA") upholding the decision of the Town's Zoning Enforcement Officer ("the ZEO") to issue a Certificate of Zoning Compliance and the issuance of a building permit by the Town's building official, to allow the construction of a single family dwelling on property known as 28 Short Beach Road in Branford. The owner of the land in question is the defendant Mary Louise Welch ("Welch"). The request for a building permit was made by the defendant Jonathan Venter ("Venter). The plaintiff owns property designated as 30 Short Beach Road, which adjoins 28 Short Beach Road.
On May 22, 2000, the ZEO issued the said certificate of zoning compliance. On May 23, 2000, the building official issued a permit for construction of a foundation for a residence at 28 Short Beach Road. On July 18, 2000, the plaintiff appealed to the ZBA the ZEO's decision and the issuance of the building permit. On that same date, the ZBA overruled the plaintiff's appeal. This appeal followed. A hearing on this appeal was held on April 9, 2001, at which the plaintiff was found to be aggrieved for purposes of standing to prosecute this appeal.
 II
The subject property is shown as Lot 7 on a subdivision map titled "Map of Maple Corners North Land of R.V. Plant Branford, Conn. Scale 1" = 40'", dated May 5, 1954 (Return of Record DD). The lot covers an area of 10,500 feet. It has a frontage on Short Beach Road of 60 feet. The property is in a residential, R-3, district which requires that a building lot have a minimum acreage of 15,000 square feet and minimum frontage of 100 feet. Welch's late husband, Donald Welch, acquired the property in May, 1968 and she now wishes to build on the lot. In furtherance of this goal, Venter, on Welch's behalf, filed an application for variances at some time prior to May, 2000. On May 16, 2000, she withdrew said application on advice from a town official or officials that the subject property was a valid, pre-existing, non-conforming lot and that no variances were needed. The plaintiff here challenges the ZBA's decision upholding the issuance of the certificate of zoning compliance and building permit, claiming that the subject property had merged with adjoining property at some time in the past and, consequently, 28 Short Beach Road is not a buildable lot. An understanding of this dispute requires a review of the property's history.
In 1954, the subject property, as well as adjoining land was owned by Ray V. Plant. At that time Branford had no zoning regulations. In 1954 a subdivision map (Return of Record, DD) was filed with the Branford Town Clerk, on which map the subject property was shown as "Lot 7"). As the CT Page 8714 plaintiff acknowledges, this was an accepted method of subdividing land at the time. In 1956, Branford instituted zoning and its Planning Zoning Commission adopted a Zoning Ordinance, effective December 3, 1956. The Ordinance included ARTICLE V, § 5.21, EXCEPTIONS TO BULK REGULATIONS:
 "5.21 Small lots for Single-Family Detached Residences. A lot either owned individually and separately and separated from any adjoining tract of land on the effective date of this ordinance, or located in and part of a subdivision plat which has been given final approval by the Planning Zoning Commission prior to such date, which has a total area or lot frontage less than the minimum required in the Bulk Table, may be used for a single-family detached residence, provided such lot shall conform to the Use Regulations and all the other Bulk Regulations, applicable to the particular lot size."
On June 30, 1967, Mildred H. Plant, as Executrix, conveyed three parcels of land to Ryan's Incorporated, a Connecticut corporation (Return of Record F). The parcels included Lot 7 and an adjacent parcel (the "Homestead Parcel").
On May 1, 1968, Ryan's, Incorporated conveyed Lot 7 to Donald R. Welch, Mary Welch's decedent (Return of Record EE).
On December 8, 1970, the Branford Planning Zoning Commission voted to approve Ryan's Incorporated's application for subdivision of one lot (Lot 2) carved from the Homestead Parcel.
The remainder of the Homestead Parcel is designated as Lot 1 and also as 30 Short Beach Road. Lot 7, adjacent to Lot 1, bears the notation ("Original") and is marked "n/f Donald R. Welch." (Return of Record O).
The plaintiff claims that, while Plant subdivided her land in 1954, establishing Lot 7, said lot could not benefit from the provisions of § 5.21 of the zoning ordinance adopted in 1956, as it was not "owned individually and separately and separated from any adjoining tract of land on the effective date of the ordinance;" nor had Lot 7 "been given final approval by the Planning Zoning Commission prior to such date [December 3, 1956]." (§ 5.21). Consequently, by the terms of § 5.21, Lot 7 could not "be used for a single-family detached residence." In other words, the plaintiff claims, Lot 7, by operation of law, merged with the adjoining land owned at that time by Plant and was not a buildable lot. CT Page 8715
Further, the plaintiff contends, Ryan's, Incorporated, in conveying Lot 7 to Donald Welch on May 1, 1968, created an illegal subdivision in violation of General Statutes, § 8-26, because Lot 7 had merged with the adjoining property owned first by Plant and by the time of said conveyance, by Ryan's, Incorporated.
 III
In his appeal to the ZBA from the ZEO's decision (Return of Record W), the plaintiff claimed that as a result of Ryan, Incorporated's 1967 acquisition of Lot 7 and an adjoining parcel, the properties merged into a single parcel by operation of law, namely, pursuant to Regulations, § 5.11.4. Section 5.11.4, currently in effect, reads as follows:
 "If the parcel fails to meet the area requirements of these Regulations, the owner of the parcel shall not also have been, at any time since the enactment of the Zoning Regulations on December 3, 1956, the owner of contiguous land which in combination with such parcel that fails to conform would make a parcel that conforms or more nearly conforms to the area requirements of these Regulations pertaining to lots."
It is undisputed that § 5.11.4 was not in effect when the 1956 Zoning Ordinance was adopted and there is no claim § 5.11.4 was in effect either in 1967, when Lot 7 and adjacent property was conveyed to Ryan's, Incorporated, or in 1968, when Lot 7 only was conveyed to Donald Welch. It appears § 5.11.4 was adopted in the 1990s, either in 1991 or 1996.
In his "Amended Appeal," filed November 7, 2000, the plaintiff claims,inter alia, that "[a]s a result of the ownership first by Plant, then by Ryan's, Inc. of the two adjoining parcels of land, they merged into a single parcel by operation of law, specifically §§ 1.2 and 5.21 of the 1956 regulations and § 5.11.4 of the current regulations, and 28 Short Beach Road lost its status as a building lot." Contiguous land owned by the same person can merge into one lot if the owner so intends or the relevant zoning regulations so require, Johnson v. Board of ZoningAppeals, 35 Conn. App. 820, 826. The Court finds that the plaintiff has failed to establish, by a fair preponderance of the evidence, an intent by the owner of Lot 7, or her predecessors, to merge Lot 7 with contiguous land. The issue to be addressed, then, is: Did Lot 7 merge with contiguous land by operation of law? CT Page 8716
When acting on an appeal of a ZEO's decision, a ZBA, pursuant to General Statutes, § 8-7 "shall state upon its records the reason for its decision." In this case the legal notice of the Board's action simply stated: "Denied the Appeal" (Return of Record L). However, the Board Chairman, in a letter to the plaintiff's counsel (Return of Record M) stated on behalf of the Board reasons for denial of the plaintiff's appeal, which this Court treats as the reason for the Board's decision. The letter reads in pertinent part:
 "It was found that, while there may have been a merger on this lot, in 1956 there were no regulations addressing this matter and no proof was offered that there were any in effect in 1967 when the property went into common ownership. Also, other properties which would have been effected [sic] were already in separate ownership when the new regulations went into effect. Therefore, the Board found that 5.11.4 does not apply and the regulations were not meant to be retroactive."
 IV
The defendant Welch asserts, inter alia, that the "plaintiff cannot ask the court to apply 1956 regulations when it did not ask the board to apply them (and failed to show they applied)." The Court agrees. At no time in the course of his appeal at the administrative level did the plaintiff cite § 5.21 of the 1956 zoning ordinance or claim a merger occurred by virtue of the adoption of said § 5.21. To the contrary, a review of the transcript of the July 18, 2000 hearing (Return of Record FF) shows the plaintiff's counsel operating on the assumption that Lot 7 had been established by the 1954 subdivision map filing and that a merger was effected by the sale of Lot 7 and the adjacent property to a single owner, Ryan, Incorporated in 1967. Once that merger was effected, the plaintiff claimed, any attempt to establish Lot 7 as a buildable lot must be tested against the requirements of current § 5.11.4. The question of whether the adoption of § 5.21 in 1956 effected a merger by operation of law was never presented to the ZBA and cannot properly be raised as a basis for sustaining the plaintiff's appeal to this Court. The question presented to the ZBA and to this Court, is: did Regulations, § 5.11.4 operate to effect a merger by operation of law by virtue of Plant's ownership of the adjacent parcels or by Ryan, Incorporated's subsequent ownership of the adjacent parcels?
 V
The defendants ask that the Court construe the word "owner" in § CT Page 8717 5.11.4 as referring to the current owner of Lot 7 or to Donald Welch, her predecessor in title. Since neither of the Welches at any time owned land contiguous to Lot 7, claim the defendants, there was no merger effected by the adoption of § 5.11.4. The Court declines to adopt this reasoning. Such a reading of § 5.11.4 would permit the owner of a merged parcel to "unmerge" it, simply by selling off the merged non-conforming portion to a buyer who owns no land contiguous to said portion. The Court finds that "owner," as used in § 5.11.4 has reference to any post-December 3, 1956 owner of a non-conforming lot who at the same time owned land contiguous to said non-conforming lot.
The Board "found that 5.11.4 does not apply and the regulations were not meant to be retroactive." Clearly, § 5.11.4 was meant to be retroactive in one sense, that is, as being applicable to a non-conforming parcel of land, the owner of which also, at any time since enactment of the Zoning Regulations on December 3, 1956, was "the owner of contiguous land . . ." Once merged, the said non-conforming parcel could be conveyed separately but would not resume its status as a buildable lot, simply by virtue of such conveyance. However, § 5.11.4 is not meant to be applied to undo a prior action of a planning zoning commission in recognizing a nonconforming lot as an independent, buildable lot. The court finds there is substantial evidence in the record to support the Board's conclusion that § 5.11.4 "does not apply."
It appears that Lot 7 was established as a buildable lot by the filing of the subdivision map (Return of Record DD) in May, 1954. The plaintiff has argued to this Court (although not to the ZBA at the administrative hearing) that Lot 7 was rendered nonconforming by the adoption of the Zoning Ordinance on December 3, 1956 and merged by operation of § 5.21 of said zoning ordinance, in that the 1954 subdivision had not been finally approved by the Town's Planning Zoning Commission prior to December 3, 1956. How such commission could act legally in the absence of regulations is left unexplained. Apparently, there was a "Subdivision Commission" in existence, subsequent to May, 1954 and prior to December, 1956 but its role is left unexplained.
By 1967, Ryan's Incorporated owns Lot 7 and contiguous land. But in 1968, Ryan's, Incorporated sells Lot 7 to Welch. Then, in 1970, Ryan's, Incorporated, seeks to subdivide the "Homestead Lot" and the Planning 
Zoning Commission approves a subdivision map depicting Lot 7 as a separate building lot. (Return of Record O). The said map shows Lot 7 as originally part of the Ryan's Incorporated parcel, Lots 7, 1 and 2 together comprising a parcel of 60,000 square feet, but with Lot 7 now separate. Clearly, the Planning Zoning Commission, when approving said map, did not consider Lot 7 as merged with Lots 1 and 2. Its approval CT Page 8718 ratified Lot 7's existence as a separate building lot. If one believed such action by the Planning Zoning Commission was illegal, arbitrary or capricious, the time to challenge such action was then, that is, within fifteen days of the publication of the commission's approval of said subdivision. (Notice of said decision was published on December 10, 1970). The plaintiff cannot now go back to challenge the ZBA's decision in the year 2000 by claiming another agency acted erroneously some thirty years ago.
Moreover, the plaintiff has failed in another respect to establish his claim that the defendant ZBA acted illegally, arbitrarily or capriciously in upholding the ZEO's action. When Ryan's Incorporated purchased Lot 7 and the contiguous "Homestead" lot in 1967, Lot 7 might have merged with the Homestead lot if Lot 7 failed to meet the area requirements of the Regulations at that time. However, there is nothing in the record to show what these requirements were in 1967, or in 1968, when Ryan's Incorporated sold to Welch. Without knowing what area requirements applied to Lot 7 in 1967, it is impossible to conclude Lot 7 was a substandard lot at that time and impossible to conclude Lot 7 merged with contiguous land at the time of Ryan's, Incorporated's purchase.
 VI
The decisions of zoning authorities are to be overruled only when it is found they have not acted fairly, with proper motives, and upon valid reasons. Goldreyer v. Board of Zoning Appeals, 144 Conn. 641, 646. The burden of overthrowing the decision of the board rests squarely on the plaintiff. Id. Zoning ordinances are in derogation of the right of private property, and where exemptions appear in favor of the property owner they should be liberally construed in his favor. Id. (citation omitted).
The plaintiff has failed to establish, by a fair preponderance of the evidence, that the Defendant ZBA, in upholding the action of the ZEO, in issuing a certificate of zoning compliance (and the building official's issuance of a building permit) for Lot 7, acted illegally, arbitrarily or in abuse of discretion.
Accordingly, the plaintiff's appeal is dismissed and judgment may enter in favor of the defendants, the Zoning Board of Appeals of the Town of Branford, Mary Louise Welch and Jonathan Venter, as against the plaintiff, Robert Costanzo.
By the Court
 John T. Downey, Judge Trial Referee
CT Page 8719